DEAN TUCKETT AND MARIE TUCKETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tuckett v. Commissioner
Docket No. 18307-81.
United States Tax Court
T.C. Memo 1983-575; 1983 Tax Ct. Memo LEXIS 212; 46 T.C.M. (CCH) 1413; T.C.M. (RIA) 83575; September 19, 1983. *212 Held, in these circumstances, respondent's determinations of income tax deficiencies and additions to the tax under secs. 6653(a), 6653(b) and 6654, I.R.C. 1954, sustained.Held further, on the Court's own motion, damages are awarded to the United States in the amount of $500 since this proceeding was instituted merely for delay. Sec. 6673, I.R.C. 1954. Dean Tuckett and Marie Tuckett, pro se. Ralph W. Jones, for the respondent. CANTREL
MEMORANDUM FINDINGS OF FACT AND OPINION CANTREL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure, on June 27, 1983. [1] Therein respondent seeks summary adjudication in his favor on the legal issues at bar, i.e., the determined income tax deficiencies and the additions to the tax under sections 6653(a), [2] 6653(b) and 6654. [3] *213 Respondent, in a separate notice of deficiency issued to each petitioner on April 13, 1981, determined deficiencies in each petitioner's Federal income tax and additions to the tax for the taxable calendar years 1977 to 1979, inclusive, in the following respective amounts: DEAN TUCKETT
Additions to Tax, I.R.C. 1954
Years
Income Tax
Sec. 6653(b)
Sec. 6654
1977
$1,316.00
$658.00
$18.00
1978
1,609.00
805.00
49.00
1979
1,475.00
738.00
50.00
MARIE TUCKETT
Additions to Tax, I.R.C. 1954
Years
Income Tax
Sec. 6653(a)
1977
$1,217.00
$61.00
1978
1,609.00
80.00
1979
1,475.00
74.00
The sole income adjustments determined by respondent in his deficiency notices are for wages received by petitioners in 1977, 1978 and 1979 computed as follows: DEAN TUCKETT'S NOTICE
Employer
1977
1978
1979
Idaho Stud Mill (Mr. Tuckett)
$17,000.00 $18,873.00 $21,319.00 Me N Stans (Mrs. Tuckett)
3,256,00 3,702.00 146.00 Speedee Cleaners (Mrs. Tuckett)
1,415.00 TOTAL WAGES
$20,256.00 $22,575.00 $22,880.00 Less: spouse's one-half share
(10,128.00)
(11,287.00)
(11,440.00)
Mr. Tuckett's one-half
community share [4] *214 $10,128.00 $11,288.00 $11,440.00 MARIE TUCKETT'S NOTICE
Employer
1977
1978
1979
Idaho Stud Mill (Mr. Tuckett)
$17,000.00 $18,873.00 $21,319.00 Me N Stans (Mrs. Tuckett)
3,256.00 3,702.00 146.00 Speedee Cleaners (Mrs. Tuckett)
1,415.00 TOTAL WAGES
$20,256.00 $22,575.00 $22,880.00 Less: spouse's one-half share
(10,128.00)
(11,288.00)
(11,440.00)
Mrs. Tuckett's one-half
community share
10,128.00 11,287.00 11,440.00 Less: Amount reported [5]
(3,256.00)
(3,703.00)
(1,561.00)
Increase to wage income
$ 6,872.00 $ 7,584.00 $ 9,879.00 Petitioners timely mailed [6] and, thus, timely filed their petition on July 13, *215 1981. Therein, at paragraphs 4 and 5, they allege-- 4. The determination of tax set forth in the said notice (sic) of deficiency is based upon the following errors: A. The amount allowed by the Commissioner for lawful deductions and expenses is incorrect. B. The determination, penalties and interest constitute an attempt on the part of the Commissioner to punish Petitioners for asserting their Constitutional right against self-incrimination. 5. The facts upon which petitioners rely, as the basis of their case, are as follows: A. Petitioners had more lawful deductions and expenses than what was allowed by the Commissioner. [7]
* * * Respondent filed his answer on September 21, 1981, wherein at paragraphs 7.(a) through (j) he makes affirmative allegations of fact in support of his determinations for the additions to the tax under section 6653(b) against Dean Tuckett, hereinafter called petitioner. Petitioners filed no reply, the time for the filing of which expired on October 30, 1981. Respondent filed no motion under Rule 37(c), the time for the filing of which expired *216 on December 14, 1981. Hence, the affirmative allegations of fact contained in respondent's answer are deemed denied. However, the pleadings are deemed closed and respondent's motion was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 37, 38, 70(a)(2) and 121. When respondent's attempts to make arrangements with petitioners for informal consultations or communications proved unsuccessful, [8] he, on April 26, 1982 served a Request for Admissions on petitioners. [9] On May 24, 1982 petitioners served their answers on respondent, filing the original thereof with the Court on May 27, 1982. Rule 90(c). Therein petitioners admitted some of respondent's requests. However, since respondent determined that many of the answers were inadequate and insufficient he filed a Motion to Review on September 30, 1982. When petitioners did not respond to that motion the Court granted it and directed petitioners to file amended answers on or before November 23, 1982. Petitioners did so. Again many of the answers were deficient and respondent filed a Motion to Impose Sanctions on December 3, 1982. The thrust of respondent's motion was to have the Court deem admitted all *217 of respondent's admissions requests except those few petitioners originally admitted. After hearing at Washington, D.C. on February 16, 1983, the Court granted respondent's motion. As a result of the foregoing, each matter contained in respondent's request for admissions is deemed admitted and conclusively established. See Rule 90(d) and (e). The following findings of fact are based upon the record as a whole, the allegations of respondent's answer admitting allegations in the petition and those matters deemed admitted and conclusively established with respect to respondent's request for admissions. FINDINGS OF FACT Petitioners legal address on the date they filed their petition was Box 165, Chester, Idaho. Petitioner filed no Federal income tax return with the Internal Revenue Service for the taxable years 1977, 1978 and 1979. While Mrs. Tuckett filed individual returns for those years reporting the wages she received she did not report thereon her community share of the wages petitioner received in those years. On or before *218 April 15, 1977 petitioners filed a joint 1976 Federal income tax return with the Internal Revenue Service on which they reported the wages they received in the aggregate amount of $16,427.00 and paid a tax due thereon of $1,870.00. [10]
During each of the years 1977, 1978 and 1979 petitioner was employed by Idaho Stud Mill and he was paid a salary in the respective amounts of $17,033.00, $18,872.69, and $21,318.60. [11] He filed no Federal income tax returns for those years. On April 26, 1976 petitioner filed a Form W-4 (Employee's Withholding Exemption Certificate) with his employer whereon he claimed 3 exemptions. On June 21, 1977 he filed a Form W-4E (Exemption from Withholding) with his employer claiming he was exempt from the withholding of Federal income tax. Therein, he advised, under the penalties of perjury, that he anticipated he would incur no liability for Federal income tax for 1976. On January 3, 1978 petitioner submitted a Form W-4E to his employer claiming he was exempt from the withholding *219 of Federal income tax. On March 7, 1978 he filed a Form W-4 with his employer claiming he was a merchant at law and exempt from Federal income tax withholding. On March 22, 1978, January 31, 1979 and April 30, 1980 he filed Forms W-4 with his employer claiming allowances in the respective amounts of 25, 18 and 18.[12]
Petitioner fraudulently, and with intent to evade tax submitted false Forms W-4 and false Forms W-4E to his employer to eliminate the withholding of Federal income tax from his wages in 1977, 1978 and 1979. He fraudulently, and with intent to evade tax, failed to file Federal income tax returns for the taxable years 1977 to 1979, inclusive. Petitioner failed to report taxable community income which he received for the taxable years 1977, 1978 and 1979 in the respective amounts of $10,128.00, $11,288.00 and $11,440.00. He failed to report and pay his income tax liabilities for those years in the amounts of $1,316.00, $1,609.00 and $1,475.00, respectively. A part of the underpayment of tax which petitioner was required to show on an income tax return for the taxable years 1977, 1978 and *220 1979 is due to fraud with intent to evade tax. OPINION Rule 34(b) provides in pertinent part that the petition in a deficiency action shall contain "clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability" and "clear and concise lettered statements of the facts on which petitioner bases the assignments of error * * *". It is clear to the Court that petitioners are yet others in a seemingly unending parade of tax protesters bent on glutting the docket of this Court and others with frivolous claims. It is clear beyond doubt that their petition alleges no justiciable error with respect to the Commissioner's determinations regarding wage income and the additions to the tax under sections 6653(a) and 6654 and no justiciable facts in support of any error are extant therein. [13] Since they have no valid defense to the Commissioner's determinations they use this forum as a platform to unleash a plethora of frivolous legal and constitutional contentions which have been rejected by this Court and others on innumerable occasions. We answer many of petitioners' frivolous *221 claims, as gleaned from this record, hereinbelow. While petitioners have asserted error respecting "lawful deductions and expenses", which may have impacted on the income tax deficiencies, they have alleged not a single justiciable fact in support of that allegation of error. We are not advised as to what the deductions and expenses were or the amounts thereof. It appears from this record that petitioners refuse to produce any records to respondent unless they are granted immunity. See Martindale v. Commissioner,692 F.2d 764 (9th Cir. 1982), [14] affg. without published opinion an unreported order and decision of this Court. See also Goodrich v. Commissioner,T.C. Memo. 1983-414. *222 Therefore, petitioners' claim must be taken as wholly frivolous. The decision whether to grant immunity rests with the United States, not with the Tax Court. 18 U.S.C. Sections 6000-6005 (1976). McCoy v. Commissioner,696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); Hartman v. Commissioner,65 T.C. 542, 547-548 (1975). To invoke the Fifth Amendment privilege, petitioners must be faced with substantial hazards of self-incrimination that are real and appreciable, and must have reasonable cause to apprehend such danger. The privilege may not itself be used as a method of evading payment of lawful taxes. Edwards v. Commissioner,680 F.2d 1268, 1271 (9th Cir. 1982), affg. per curiam an unreported decision of this Court; McCoy v. Commissioner,supra.[15] *223 There is nothing in this record remotely indicating that petitioners are faced with substantial hazards of self-incrimination or that they have reasonable cause to apprehend such danger. Petitioners' First Amendment rights have not been abrogated or abridged here. See Muste v. Commissioner,35 T.C. 913 (1961), and United States v. Lee,455 U.S. 252, 260 (1982), revg. and remanding a District Court decision, where the United States Supreme Court, in a case concerning a claim of religious protection under the First Amendment, stated: "Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax". Similarly, petitioners' Ninth Amendment rights have not been violated. Tingle v. Commissioner,73 T.C. 816 (1980). With respect to petitioners' Fourth Amendment claim the Court in Edwards v. Commissioner,supra at 1270, said-- Appellants' fourth amendment claim is without foundation and utterly devoid of merit. Requiring taxpayers, who institute civil proceedings protesting deficiency notices, to produce records or face dismissal constitutes no *224 invasion of privacy or unlawful search or seizure". [See Martindale v. Commissioner,supra. ] Petitioners have not been wrongfully denied a jury trial. "The Seventh Amendment does not apply to suits against the United States, because there was no common law action against the sovereign. McElrath v. United States,102 U.S. 426, 440 (1880). Thus, it has repeatedly been held that there is no constitutional right to a jury trial in the Tax Court. Phillips v. Commissioner,283 U.S. 589, 599 n. 9 (1931); Dorl v. Commissioner,507 F.2d 406 (2d Cir. 1974), affg. 57 T.C. 720 (1972); McCoy v. Commissioner,696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); Lonsdale v. Commissioner,661 F.2d 71, 72 (5th Cir. 1981), affg. a Memorandum Opinion of this Court". Rowlee v. Commissioner,80 T.C. 1111, 1115 (1983). While petitioners may, indeed, petition this Court as they did (sections 6212 and 6213), they had an option to seek another forum. On this very point the Court in McCoy v. Commissioner,supra at 1237, opined--"Moreover, by paying the tax and perfecting a refund suit the McCoys could have obtained a jury trial. They voluntarily chose not to do this." [16] However, since they opted *225 to file a petition with this Court, the mere filing of that petition is sufficient to deprive a U.S. District Court of jurisdiction for the years now before this Court. Further, we have no authority to remove this case to a U.S. District Court. Dorl v. Commissioner,507 F.2d 406 (2d Cir. 1974), affg. 57 T.C. 720 (1972). Moreover, this Court has no procedure which authorizes or permits a party to unilaterally withdraw a petition once filed. Gross income means all income from whatever source derived including (but not limited to) wages. It includes income realized in any form, whether in money, property, or services. Section 61. Income as defined under the Sixteenth Amendment is "gain derived from capital, from labor, or from both combined". Eisner v. Macomber,252 U.S. 189, 207 (1920). Section 61 encompasses all realized accessions to wealth. Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). See United States v. Buras,633 F.2d 1356, 1361 (9th Cir. 1980), where the Court said--"* * * 'the earnings of the human brain and hand when unaided by capital' are commonly treated as income" and "* * * the Sixteenth Amendment *226 is broad enough to grant Congress the power to collect an income tax regardless of the source of the taxpayer's income". [Citations omitted.] "One's gain, ergo his 'income,' from the sale of his labor is the entire amount received therefor without any reduction for what he spends to satisfy his human needs." Reading v. Commissioner,70 T.C. 730, 734 (1978), affd. 614 F.2d 159 (8th Cir. 1980). "Although the wages [gross income] received by [petitioners] may represent no more than the time-value of [their] work, they are nonetheless the fruit of [their] labor, and therefore represent gain derived from labor which may be taxed as income". [Emphasis added.] See Rice v. Commissioner,T.C. Memo 1982-129, and cases cited therein. See also Rowlee v. Commissioner,supra at 1119-1122, and cases cited therein. This Court generally (as is the case here) will not look behind a deficiency notice to examine evidence used or the propriety of the Commissioner's motives or of the administrative policy or procedures involved in making his determinations. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). The determinations made by respondent in his notices of deficiency respecting *227 the income tax deficiencies and the additions to the tax under sections 6653(a) and 6654 are presumed correct; the burden is on petitioners [not respondent] to show those determinations are wrong, and the imposition of the burden of proof is constitutional. Welch v. Helvering,290 U.S. 111 (1933); Rockwell v. Commissioner,512 F.2d 882, 887 (9th Cir. 1975); Rule 142(a). Petitioners have not even attempted to carry that burden; they have failed to allege any fact or legal theory that would tend to show that the Commissioner's determinations are incorrect. Their unsupported claim of error is not enough to withstand respondent's motion. See Knighten v. Commissioner,702 F.2d 59 (5th Cir. 1983), affg. per curiam an unreported order and decision of this Court. We next consider the additions to the tax under section 6653(b). The burden of proof with respect to the fraud issues is upon respondent to prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Section 7454(a); Rule 142(b); Imburgia v. Commissioner,22 T.C. 1002 (1954). That burden can be satisfied by respondent through those facts deemed admitted and *228 conclusively established pursuant to Rule 90. [17] Here, material factual allegations in respondent's request for admissions have been deemed admitted and conclusively established. In our view, those facts, which we have set forth hereinbefore in our findings of fact, clearly and convincingly establish fraud with intent to evade tax and we rely on them in sustaining respondent's determinations under section 6653(b). Rule 121 provides that a party may move for summary judgment upon all or any part of the legal issues in controversy so long as there are no genuine issues of material fact. Rule 121(b) states that a decision shall be rendered "if the pleadings * * * admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law". The summary judgment procedure is available even though there is a dispute under the pleadings if it is shown through materials in the record outside the pleadings that no genuine issue of material fact exists. [18] *229 The record here contains a complete copy of the notices of deficiency, the petition, answer, and respondent's request for admissions with attached exhibits. Respondent has amply demonstrated to our satisfaction that there is no genuine issue as to any material fact present in this record and, thus, that respondent is entitled to a decision as a matter of law. In such posture, summary judgment is a proper procedure for disposition of this case. Respondent's Motion for Summary Judgment will be granted in every respect. The final matter we consider is whether, in the circumstances here extant, we should, on our own motion, award damages to the United States under section 6673 and, if so, in what amount. [19] *232 We addressed the very heart of this matter in September of 1977 in Hatfield v. Commissioner,68 T.C. 895, 899 (1977), when we stated in clear and unequivocal language: In recent times, this Court has been faced with numerous cases, such as this one, which have been commenced *230 without any legal justification but solely for the purpose of protesting the Federal tax laws. This Court has before it a large number of cases which deserve careful consideration as speedily as possible, and cases of this sort needlessly disrupt our consideration of those genuine controversies. Moreover, by filing cases of this type, the protesters add to the caseload of the Court, which has reached a record size, and such cases increase the expenses of conducting this Court and the operations of the IRS, which expenses much eventually be borne by all of us. Many citizens may dislike paying their fair share of taxes; everyone feels that he or she needs the money more than the Government. On the other hand, as Justice Oliver Wendell Holmes so eloquently stated: "Taxes are what we pay for civilized society". Compania de Tabacos v. Collector,275 U.S. 87, 100 (1927). The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system which depends upon self-assessment. Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's *231 determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the system. Access to the courts depends upon a real and actual wrong--not an imagined wrong--which is susceptible of judicial resolution. General grievances against the policies of the Government, or against the tax system as a whole, are not the types of controversies to be resolved in the courts; Congress is the appropriate body to which such matters should be referred. [20]
While we did not award damages in Hatfield, 79 T.C. at 900, we issued this warning--"* * * but if tax protesters continue to bring such frivolous cases, serious consideration should be given to imposing such damages". [Citations omitted.] Similar warnings were promulgated in Crowder v. Commissioner,T.C. Memo. 1978-273 and Clippinger v. Commissioner,T.C. Memo. 1978-107. Tax protest petitions continued to be filed with this Court with increased frequency and, finally, upon motion of respondent, we began awarding damages to the United States in appropriate cases. See Wilkinson v. Commissioner,71 T.C. 633 (1979), and Greenberg v. Commissioner,73 T.C. 806 (1980). [21] *234 Shortly after we issued Greenberg we, for the first time, awarded damages in a proper circumstance on our own motion. Sydnes v. Commissioner,74 T.C. 864, 870-873 (1980), affd. *233 647 F.2d 813 (8th Cir. 1981). [22] Petitions filed merely for delay continued to overburden this Court's docket. In recognition of this fact, on June 15, 1981, we aptly stated-- It may be appropriate to note further that this Court has been flooded with a large number of so-called tax protester cases in which thoroughly meritless issues have been raised in, at best, misguided reliance upon lofty principles. Such cases tend to disrupt the orderly conduct of serious litigation in this Court, and the issues raised therein are of the type that have been consistently decided against such protesters and their contentions often characterized as frivolous. The time has arrived when the Court should deal summarily and decisively with such cases without engaging in scholarly discussion of the issues or attempting to soothe the feelings of the petitioners by referring to the supposed "sincerity" of their wildly espoused positions. [McCoy v. Commissioner,76 T.C. 1027, 1029-1030 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Emphasis added.] This Court is not the only Court that has considered awarding damages or other costs, either on its own motion or on motion of the Commissioner, in a proper case. In a tax protester situation, where one of the frivolous issues was whether the U.S. Constitution forbids taxation of compensation received *235 for personal services, the Fifth Circuit Court of Appeals stated in late 1981-- Appellants' contentions are stale ones, long settled against them. As such they are frivolous. Bending over backwards, in indulgence of appellants' pro se status, we today forbear the sanctions of Rule 38, Fed. R. App. P. We publish this opinion as notice to future litigants that the continued advancing of these long-defunct arguments invites such sanctions, however. [Lonsdale v. Commissioner,661 F.2d 71, 72 (5th Cir. 1981), affg. T.C. Memo. 1981-122.][23]
In Knighten v. Commissioner,supra, the Court of Appeals following its warning took action. There, damages were not sought nor awarded in our Court. Damages were sought by the Commissioner and double costs were awarded in the Court of Appeals. Very recently on August 15, 1983, the Fifth Circuit has spoken again in a tax protester situation. There, deeming an appeal patently frivolous, the Court, on its own motion, awarded damages in the *236 form of double costs to the Commissioner of Internal Revenue. See Steinbrecher v. Commissioner,     F.2d     (5th Cir. Aug. 15, 1983). The Court of Appeals for the Ninth Circuit has, in a summary and decisive manner, awarded double costs (under Rule 38, Fed. R. App. P.) in several tax protester cases on its own motion.On July 7, 1982, in Edwards v. Commissioner,supra at 1271, the Court said-- Meritless appeals of this nature are becoming increasingly burdensome on the federal court system. We find this appeal frivolous,Fed. R. App. P. 38, and accordingly award double costs to appellee [the Commissioner of Internal Revenue]. [Citations omitted.] [Emphasis added.] Accord, McCoy v. Commissioner,supra; Barmakian v. Commissioner,698 F.2d 1228 (9th Cir. 1982), affg. without published opinion an unreported order and decision of this Court; Martindale v. Commissioner,supra.[24]
It is now certain that the courts, will no longer tolerate the filing of frivolous appeals. On June 13, 1983, the Supreme Court, for the first time, invoked the provisions of its Rule 49.2, which the Court *237 adopted in 1980, and ordered an appellant to pay damages for bringing a frivolous appeal. [25] In Tatum, Elmo C. v. Regents of Nebraska-Lincoln (No. 82-6145) the Court issued the following order: "The motion of respondents for damages is granted and damages are awarded to respondents in the amount of $500.00 pursuant to Supreme Court Rule 49.2". [26] The direction of this nation's highest Court appears crystal clear--that no Court should abide frivolous appeals, not only in discrimination suits but in any other area of litigation, including Federal income taxation. Here, petitioners have instituted this proceeding and have asserted as their defense to the Commissioner's determinations nothing but frivolous contentions. Petitioners with genuine controversies have been delayed while we considered this *238 case.In these circumstances, petitioners cannot and have not shown that they, in good faith, have a colorable claim to challenge the Commissioner's determinations. Indeed, they knew when they filed their petition that they had no reasonable expectation of receiving a favorable decision. There has been no change in the legal climate and in view of the extensive and long well settled case precedents, no reasonably prudent person could have expected this Court to reverse itself in this situation. [27] "When the costs incurred by this Court and respondent are taken into consideration, the maximum damages authorized by the statute ($500) do not begin to indemnify the United States for the expenses which petitioner's frivolous action has occasioned. Considering the waste of limited judicial and administrative resources caused by petitioner's action, even the *239 maximum damages authorized by Congress are wholly inadequate to compensate the United States and its other taxpayers. These costs must eventually be borne by all of the citizens who honestly and fairly participate in our tax collection system. * * *". Sydnes v. Commissioner,supra at 872-873. Since we conclude that this case was brought merely for delay, the maximum damages authorized by law ($500) are appropriate and will be awarded pursuant to section 6673. [28] To reflect the foregoing An appropriate order and decision will be entered.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended. ↩
3. This case was assigned pursuant to sec. 7456(c) and (d), Internal Revenue Code of 1954, as amended and Delegation Order No. 8 of this Court, 81 T.C. VII (1983). Since this is a pre-trial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182 are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
4. During the years before the Court and on the date their petition was filed petitioners were residents of the State of Idaho, a community property State. In accordance with the community property laws of Idaho respondent, in each deficiency notice, has attributed one-half of the marital income to each spouse.
5. Mrs. Tuckett, who was a waitress in 1977, 1978 and 1979, filed Individual Federal Income Tax Returns with the Internal Revenue Service for those years whereon she reported the wage income she received from her employers. Copies of those returns and the Forms W-2 (Wage and Tax Statements) reflecting the wages received are in this record.↩
6. See sec. 7502. ↩
7. The language quoted above from the petition is the sum and substance of petitioners' case.↩
8. See Odend'hal v. Commissioner,75 T.C. 400↩ (1980); Rule 90(a). 9. The original of that request was filed with the Court on April 29, 1982. Rule 90(b).↩
10. A copy of the 1976 return and the Forms W-2 reflecting the receipt of said wages, are in this record.↩
11. Copies for the Forms W-2 reflecting payment of said wages are in this record.↩
12. Copies of the Forms W-4 and W-4E, duly signed by petitioner, are in this record.↩
13. In such circumstance, Rule 34(b)(4) states, in part--"Any issue not raised in the assignment of errors shall be deemed to be conceded". See Jarvis v. Commissioner,78 T.C. 646, 658 (1982). Moreover, we said in Gordon v. Commissioner,73 T.C. 736, 739↩ (1980)--"* * * Any issue, including addition to tax for fraud under section 6653(b), not raised in the assignment of errors is deemed conceded by the petitioner. Rule 34(b)(4)". Notwithstanding, here, we rely on those matters deemed admitted in sustaining all of respondent's determinations.
14. We observe that venue on appeal of this case lies in the United States Court of Appeals for the Ninth Circuit.↩
15. See also, Martindale v. Commissioner,692 F.2d 764 (9th Cir. 1982), affg. without published opinion an unreported order and decision of this Court; United States v. Carlson,617 F.2d 518, 523 (9th Cir. 1980), cert. denied 449 U.S. 1010 (1980); and United States v. Neff,615 F.2d 1235, 1238 (9th Cir. 1980), cert. denied 447 U.S. 925↩ (1980).
16. See Drake v. Commissioner,554 F.2d 736, 739↩ (5th Cir. 1977).
17. See Miller v. Commissioner,T.C. Memo. 1983-476, and Hindman v. Commissioner,T.C. Memo. 1983-389↩.
18. Such outside materials may consist of affidavits, interrogatories, admissions, documents or other materials which demonstrate the absence of such an issue of fact despite the pleadings. See Note to Rule 121(a), 60 T.C. 1127↩.
19. Sec. 6673 provides-- "Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax". We observe that in proceedings commenced after December 31, 1982 this Court is permitted to impose damages up to $5,000 where those proceedings have been instituted or maintained by the taxpayer primarily for delay or where taxpayer's position in such proceeding is frivolous or groundless. See secs. 292(b) and (e)(2), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 574. 20. The language in the first paragraph quoted from Hatfield↩ above, so true when stated, is all the more impelling today because of the ever increasing caseload of this Court.
21. See also Lynch v. Commissioner,T.C. Memo. 1983-428; Goodrich v. Commissioner,T.C. Memo. 1983-414; Cornell v. Commissioner,T.C. Memo. 1983-370; Stamper v. Commissioner,T.C. Memo. 1983-248; Sommer v. Commissioner,T.C. Memo. 1983-196, on appeal (7th Cir. July 12, 1983); Jacobs v. Commissioner,T.C. Memo. 1982-198; Senesi v. Commissioner,T.C. Memo. 1981-723, affd. 709 F.2d 1507 (6th Cir. 1983); Swann v. Commissioner,T.C. Memo. 1981-236↩, dismissed (9th Cir. 1982). We note that the predecessor of the statute we now consider, which in essence, contained virtually identical language, was enacted by Congress in 1926. 22. See also Jacobs v. Commissioner,T.C. Memo. 1983-490; Miller v. Commissioner,supra;Perkins v. Commissioner,T.C. Memo. 1983-474; Burton v. Commissioner,T.C. Memo. 1983-455; Vickers v. Commissioner,T.C. Memo. 1983-429; Mele v. Commissioner,T.C. Memo. 1983-387; Ballard v. Commissioner,T.C. Memo. 1982-56; and Graves v. Commissioner,T.C. Memo. 1981-154, affd. without published opinion 698 F.2d 1219↩ (6th Cir. 1982), where damages were awarded on our own motion.
23. Rule 38, Federal Rules of Appellate Procedure, provides-- DAMAGES FOR DELAY. If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to appellee.↩
24. In none of the four cases decided by the Ninth Circuit were damages sought or awarded in this Court.↩
25. Rule 49.2 of the Supreme Court's rules provides-- "When an appeal or petition for writ of certiorari is frivolous, the Court may award the appellee or the respondent appropriate damages". ↩
26. In that case Mr. Tatum had brought a series of civil right suits against the University of Nebraska charging that the University had discriminated against him by failing to provide adequate housing.↩
27. "* * * [A] person's intent in performing an act includes not only his motive for acting (which may be defined as the objective which inspires the act), but also extends to include the consequences which he believes or has reason to believe are substantially certain to follow". Greenberg v. Commissioner,73 T.C. 806, 814↩ (1980).
28. The Court has considered petitioners' "Notice and Demand", filed on August 12, 1983, and find it to be meritless.↩