Norman E. McCoy and Mary Louise McCoy, Petitioners
v. Commissioner of Internal Revenue, Respondent

Docket No. 12076–78.    Filed June 15, 1981.

Norman E. McCoy, pro se.
*Marc J. Winter*, for the respondent.

OPINION

Raum, *Judge*: The Commissioner determined the following income tax deficiencies and additions to tax against each of the petitioners, husband and wife: [1]

| Year | Deficiency | Additions to tax, I.R.C. 1954 | | |
| | | Sec. 6651(a) | Sec. 6653(a) | Sec. 6654 |
| --- | --- | --- | --- | --- |
| 1973 | $971 | $171.28 | $48.55 | $19.68 |
| 1974 | 1,424 | 268.66 | 71.20 | 31.68 |
| 1975 | 2,648 | 338.17 | 132.40 | 44.82 |
| 1976 | 892 | 80.50 | 44.60 | 0 |

Petitioners filed a single petition challenging the foregoing determinations.

This case has been the subject of numerous motions, most of which were disposed of prior to May 18, 1981, when the case was calendared for trial in Los Angeles. Petitioners are tax protesters, and in the various materials filed by them they have not squarely addressed the Commissioner's determinations on the merits, but have raised a wide variety of objections based not only upon many provisions of our Constitution, but also upon the Bible, the Bill of Rights, the Declaration of Independence, the Magna Carta, the Northwest Ordinance, the Declaration of Resolves, the Federalist Papers, the Mayflower Compact, the

---

[1]Petitioners appear to have been residents of a community property State during the years involved, and the Commissioner attributed one-half of the aggregate income and deductions to each of them on the assumption that the receipts and disbursements were to be treated as community items.

In a statement accompanying the deficiency notices, there appear to be certain "Prepayment Credits." Petitioners, of course, will be given the benefit of any such credits in respect of the amounts to be collected as a result of any deficiencies determined in accordance with this opinion.

Articles of Confederation of 1778, the Declaration of Rights of 1765 and 1774, as well as a host of other unsupported positions including the Statute of Limitations, the Statute of Frauds, Laches, Estoppel, Waiver, and their failure to "earn 'Dollars' as defined by the U.S. Constitution." The Commissioner's action has been described as "willful, wanton, and malicious and intentional." Among other things, they demanded a trial by jury and demanded judgment against the Commissioner in the amount of $5 million "payable in Gold and Silver Coin."

Two matters relating to motions remained to be acted upon at the time of the May 18, 1981, calendar at Los Angeles. One, dated March 20, 1981, was a motion filed April 6, 1981, on behalf of petitioners, and asked for summary judgment in their favor. It was utterly without merit and will be denied.

The other matter grew out of respondent's motion, filed January 2, 1981, for an order compelling petitioners to respond to respondent's interrogatories and request for the production of documents; this motion was the subject of a hearing on March 20, 1981, in Los Angeles before Judge Nims of this Court. Petitioner Norman E. McCoy appeared on behalf of both petitioners. He persistently objected to answering the interrogatories or producing the requested documents, asserting his rights under the Fifth Amendment, stating that Government counsel had refused to "give [him] a grant of immunity." Mr. McCoy indicated that the immunity he was seeking was widespread and related to "anything" he may have done. He did not limit his claim to violations of the internal revenue laws. He did not give even a hint as to the possible crimes in respect of which he feared prosecution. Judge Nims made plain that any such sweeping claim under the Fifth Amendment was inadequate, and invited Mr. McCoy to give him some inkling in private in chambers, out of the hearing of Government counsel, so that Judge Nims could determine whether there was any substance to petitioners' Fifth Amendment claim. Mr. McCoy refused. Judge Nims thereupon ordered that:

Petitioners shall on or before April 9, 1981, answer the interrogatories served upon petitioners October 20, 1980 and produce the documents and things in respondent's request attached thereto, or show cause at the Trial Session of the Court scheduled to Commence at 10:00 a.m. on May 18, 1981, in Room 8541, Federal Building, 300 North Los Angeles Street, Los Angeles, California 90012, why sanctions should not be imposed.

At the calendar call on May 18, 1981, it appeared that petitioners had failed to respond without evasion or ambiguity to highly significant interrogatories and had failed to produce highly significant documents that were the subject of respondent's request. Mr. McCoy, who appeared on behalf of petitioners, again invoked the Fifth Amendment, insisting upon a grant of immunity of undefined scope.

We were thoroughly satisfied that petitioners' stubbornly asserted position constituted a default. The privilege against self-incrimination may be invoked only when an answer to the question posed would expose the petitioner to a real danger of criminal prosecution; remote or speculative possibilities of prosecution for unspecified crimes are not sufficient to justify a refusal to respond. See, e.g., *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972); *Ryan v. Commissioner*, 568 F. 2d 531, 539 (7th Cir. 1977), cert. denied 439 U.S. 820 (1978), affg. 67 T.C. 212, 217 (1976); Burns v. Commissioner, 76 T.C. 706, 707 (1981). In the circumstances of the record before us, petitioners' conduct calls for the imposition of the most severe sanctions available under our Tax Court Rules of Practice and Procedure, namely, the dismissal of the case for failure properly to prosecute by failing to comply with our Rules and a specific order of the Court; judgment will accordingly be rendered against petitioners. Rules 104(c)(3) and (d), and 123(a) and (b), Tax Court Rules of Practice and Procedure; see *Eisele v. Commissioner*, 580 F.2d 805 (5th Cir. 1978); *Lockwood v. Commissioner*, a Memorandum Opinion of this Court, 41 T.C.M. 1511, 1512, 50 P-H Memo T.C. par 81,243, at 813–814 (1981).

It may be appropriate to note further that this Court has been flooded with a large number of so-called tax protester cases in which thoroughly meritless issues have been raised in, at best, misguided reliance upon lofty principles. Such cases tend to disrupt the orderly conduct of serious litigation in this Court, and the issues raised therein are of the type that have been consistently decided against such protesters and their contentions often characterized as frivolous. The time has arrived when the Court should deal summarily and decisively with such cases without engaging in scholarly discussion of the issues or

attempting to soothe the feelings of the petitioners by referring to the supposed "sincerity" of their wildly espoused positions.

*Decision will be entered for the respondent.*